Thank you both for your arguments. Alright, the next matter on calendar is Keith Wilkins v. Steve Herron, 24-80. Each side has 15 minutes. Scores of challenges to COVID-19 vaccine mandates have been rejected by the courts across the United States and across the United States, and the conclusion that a rational basis test applies to that consideration. This district court did the same. It relied on Jacobson. However, after this court's opinion in Health Freedom Defense v. Colvallo in June of this year, Jacobson is inapplicable. That court found that Jacobson was based on a public health rationale, and when the plaintiff in that case pled that the COVID vaccines do not confer immunity, that wipes out the public health rationale. There is no rational basis to mandate a vaccine that does not confer immunity. Well, okay, but Jacobson upheld a vaccine mandate over the defendant's objections that the vaccine was ineffective and unsafe. So for purposes of qualified immunity, how could we determine that Mr. Wilkins had a clearly established right to refuse a vaccine or wear a mask during the pandemic? Because qualified immunity has got two prongs, so I don't see how it was clearly established. It's clearly established because he is a human being, and you cannot mandate an experimental drug on a human being, and that is a Clearly established ties to case law. The Nuremberg trials, Your Honor, the Nuremberg trials established that under God, you cannot experiment on human beings. Now, that was the doctors in that case. Can you cite to a Supreme Court or a Ninth Circuit case or actually any circuit case that would help you in your clearly established law analysis? No, no, because In the United States? No, because no government until COVID came along was stupid enough to mandate a experimental drug. Has never happened before. The only case where that happened was in the case of the military with, in the District of Columbia. And the judge in that case said, I'm not going to make servicemen guinea pigs to test experimental drugs. So the Nuremberg Code, the doctors at Nuremberg objected. The problem is, let's stay with the doctrine of qualified immunity for a moment. There's a lot there. You've started your argument with the Jacobson argument. That's fine. I take it that you view that to be one of your stronger arguments. But in order for qualified immunity not to apply, you've got to point to clearly established case law. So in the absence of that, then the administrators get qualified immunity. Isn't that the current state of the law? Well, I have two responses to that. One is in other jurisdictions, not the Ninth Circuit, qualified immunity does not apply to premeditated acts. So qualified immunity is justified on a police officer reacting quickly under stress in a dangerous situation. That's the rationale for qualified immunity. And Justice Thomas has commented, why should that same rationale apply to something that's a premeditated act where they had time to make a decision? So qualified immunity should not apply in a case of a premeditated act. I recognize that the Ninth Circuit is on the other side of that point. So you have to follow that precedent. But a juice quotient's right is so fundamental that the doctors at Nuremberg who said, you can't prosecute me under this because of ex post facto law. And the chief judge of the Supreme Court who was there said, no, this is under God. You should have known. There's no qualified immunity for a juice quotient's right, which is above all other law. You should have known what they told the doctors. And that's true for every human being in the world because the Nuremberg Code applies to all states. Can we talk about the Monell claim? All right. And I'm going to ask your friend on the other side to address this as well. That it appears that they're claiming they were applying state law that was binding on the municipality at the time. And the state law that we're talking about here does not appear to have been enacted until after your client was either put on administrative leave or actions were taken. So I'm curious what state law we're talking about that they were applying. They were applying the vaccine mandate that happened before my client was put on leave. Even before Ben Levine's school district instituted their policy. It was the mandate by Governor Brown that all doctors, all medical workers, and all school teachers. I think that they were applying some other law that happened after he was actually put on leave. So I'm curious. Well, there was a series of temporary rules that Oregon put into place. And they stretched from August of 2021 into 2022. But it was August of 2021 that that mandate went into effect. And it had a deadline to get to comply. I think it was October 21st of 2021. So are you aware of any case holding that a municipality may be liable under Monell merely for enforcing a state law that was binding on the municipality? Yes, Evers. Evers versus County of Custer. 745 Fed 2nd 1196 9th Circuit 1984. So there's a circuit split. 9th Circuit says that there is no good faith exception to faithfully following orders from the state, a higher authority. But Evers says the policy of 1983 is not to protect municipalities. It's to protect individuals who are wronged by the misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. So 9th Circuit. I guess I slightly disagree with your characterization of there being a circuit split as more as there being a distinction in the circumstances of these cases. So there's when a municipality has discretion and how they're enforcing state law, we say that there can be a Monell liability. But in our cases where the municipality had no discretion and there was simply a straight mandate that this municipality do something, we've said there cannot be a Monell liability. So where in your case is there, do you have a case where there was no discretion and we found Monell liability or was there discretion here? I don't understand that to be a distinction. Okay. I think a distinction is whether they were enforcing a law. In other words, they were pulling someone over on the street or something or whether they had a policy, whether they instituted their own policy. Your complaint alleges that Mr. Wilkins was placed on unpaid leave in February 2021. That was before the state regulatory vaccine and mandates took effect. If you had a chance to amend, I understand that the district court dismissed this without leave to amend. If you didn't get a chance to amend, if you had a chance to amend, could you allege facts to show that Mr. Wilkins was placed on unpaid leave pursuant to some policy or custom of the district? And if so, what would you allege? I want your offer of proof on that. I really have to look back at the complaint because I'm pretty sure this is 2022 we're talking about. Well, if you want leave to amend on a Monell claim, it was dismissed. So what more could you allege? I just went through what you alleged. That it was the policy of Ben Lapine School District to mandate vaccines. But what policy? Do you have written down policies? What do you have? I could amend with specifics in various communications from Ben Lapine School District to my client. And communications, I could specify the communications between my clients. Would the allegation be that they had a policy independent of the state law or they just had a policy of following the state law? They had a policy of implementing the vaccine mandate. From the state? Not necessarily. I don't even know they referred to the state law. Their excuse now is that they're following state law. But I have to go back and look. But my belief is they mandated policy based on, I mean, of course they were spurred on by the state law. But the fact that they have a policy is... Let me try again because I'm not sure if I got your answer or understood your answer to Judge Callahan's question. You amended once as a matter of right below. And the amended complaint doesn't allege any policy or custom that's independent of state law. So if you were given an opportunity to amend law, amend right now one more time, would you be able to come up with any additional allegations of a custom or policy independent of the policy to implement state law? It was not independent of state law. They created the policy because of the state law. But it is still, once they create a policy, when it's their policy, when it's municipal policy, that is, there's no excuse, basically. There's no qualified immunity for those acts. They could have not followed state law. They could have not followed state law and recognized that the Nuremberg Code is the supreme law of the land. And you can't mandate people to take experimental drugs. They could have done that.  So you're down to three minutes. Would you like to reserve? Yes. Okay. Thank you. All right. We'll hear from the district. Good morning. Good morning. May it please the Court. Beth Plass on behalf of Steve Herron, Chad Lowe, Stephen Cook, Paul Dean, and the Ben Lapine School District. The Court should affirm the dismissal of all claims in Mr. Wilkham's complaint without leave to replead. Well, let me go back on this because the plaintiff alleges that he was placed on unpaid leave in February 2021 before the state's regulatory vaccine and mask mandates took effect. Why shouldn't we grant him leave to amend with respect to Monell's policy or custom and requirement? Because the state law that you said you were relying on didn't come into effect until after he was placed on administrative leave. So I don't understand that. Well, I think that the plaintiff certainly has argued throughout this case, and I can give you some citations to the record, that his injuries were caused by the state law and that the district was following the state law. Counsel, can you pull the microphone down just a little bit? Thank you. That the complaint is clear. There's no dispute that the alleged injuries that this plaintiff is relying on are caused by... But the law that you said you were enforcing was after he was put on administrative leave. So what were you enforcing in February 2021 when he was put on leave? I believe that would be the mask mandates and not the vaccine mandates, but I don't think it's clear from the plaintiff's complaint that that's what was going on. But I think it is clear, and there's certainly no dispute in paragraph 31 of his amended complaint, paragraph... So there was no vaccine mandate in 2021? The vaccine mandate is... The date that it came into effect or that school officials were required to enforce it... So do you get what I'm saying here? You're saying he got put on administrative leave because he wouldn't get vaccinated and he wouldn't wear a mask, right? I think that he was put on... And that state law didn't come into effect until after he got put on administrative leave. So I'm trying to address that February 2021 period to the August 2021 period and find out what your policy was. What were you enforcing if it wasn't in effect? So there are two policies at issue here. There is a mask mandate that the state issued that we were enforcing. And I think that's what triggered Mr. Wilkins to go on leave. And then subsequent to that, I believe it was issued in August, but the requirement to get vaccinated was issued and the requirement to become vaccinated, the school district was mandated to require that by October of 2021. So the impetus to putting Mr. Wilkins on leave was his refusal to comply with the mask requirement. So it didn't have anything to do with the vaccine? Correct, because the district wasn't mandating the vaccine until after the state... The district, in fact, never did. The district is only following state law. So do you have any of your own policies? Do you have any policies? There's no allegations in the complaint about policies of the school district. The allegations in the complaint, again, and conceded or alleged to be that the district was doing this at the direction of the state. And again, it's in the record plaintiff's excerpt at 22, which is the amended complaint, paragraph 31. The excerpt at 29, paragraph 63 of the complaint. And the whole briefing is essentially that the school district was complying with... was enforcing a state mandate. So if the plaintiff and I just... or the appellant here just argued that your Monell argument is foreclosed by Evers, I asked for a case, and I'm sure you're familiar with Evers v. Custer. So what's your response to his argument that Evers forecloses? It doesn't, and I think that the court already sort of explained the distinction. In the case law, I think we cited a number of out-of-circuit cases for this very point, and the appellant cited Evers. And if you read those cases, the threat is generally this. If an alleged constitutional violation is the very thing mandated by the statute, then a municipal entity can't be liable under Monell because there's no policy choice by the local body that caused the violation if the challenge is to the very thing authorized. Now, if the question is instead, is the challenge to the manner in which it was implemented, then that is something that potentially a municipal entity could be liable for, and that's exactly Evers. In fact, in Evers, a state statute permitted a county to issue declarations creating road easements over private land, and the county did that. And the county ultimately was not able to escape Monell liability because in that case, they imposed that, I think easement is the wrong term, but generally easement, without providing notice and an opportunity to be heard. It wasn't, the challenge in Evers was not a challenge to road easements, period. It was a challenge to the procedure by which they imposed it. Well, let me ask you about the due process vaccine claim. Do you dispute that under a Health Freedom Defense Fund, the district court erred in dismissing the due process claim with respect to the vaccine mandate? And if so, on what basis? I do think that the court should still uphold the due process claim for a number of reasons. Okay, you jumped right ahead. My question was, do you dispute that under Health Freedom Defense Fund, which we're currently bound by, while it's not final at this stage, do you dispute that the district court erred in dismissing the due process claim with respect to the vaccine mandate? I don't think, the court couldn't have procedurally because that case was issued after, but you could, I mean, you could, I would say that you shouldn't. Well, it's on the books right now. I think health freedom is distinguishable on a number of grounds. Of course, first, the issue was about an actual school district's policy that was mandating vaccines that wasn't tied to this, I think it's California is where it originated, so it wasn't tied to a state mandate, so it's distinguishable there. And the school district had some bad behavior on shifting to try to avoid review by this very court. But there, it's true that the plaintiffs allege that the vaccine did not stop the spread of the vaccine, but the court takes pains to say that all the court had at its disposal in that case was that allegation. There was nothing on the school side of the ledger about why, and the court in that case specifically said there was nothing judicially noticeable for it to refer to, even if it, it doesn't say even if we were going to apply rational basis, but it says there's basically nothing in the record. Here, it's the complete opposite. The rules themselves that the school district was enforcing give the justification for the vaccine, including stopping the spread. The emergency use authorization rules that Mr. Wilkins has relied on repeatedly in this case state that emergency use authorization can only be given when medications are effective in diagnosing, treating, or preventing disease. Well, we're in a different place right now than we were back in, you know, and I mean, I think all of us here lived through 2020 when it started and everything, you know, that we all, and many of us have been poked many times by now with vaccines, and many of us have also gotten COVID, even though we've had vaccines. So is there something different about now than it was back then? I mean, people, you know, I think many people thought at the time that we were all going to die and that the vaccines were going to work in a way that we wouldn't get COVID and any number of things, and now the science is a little, there's more, it's a lot more contested. So is there something that he can allege now that it's, we're in a different place now than we were back then, and the science is in a different place? And we do have this health freedom case. So should he be allowed an opportunity to amend? Well, he didn't ask for an opportunity to amend in the district court in response to our motion to dismiss. He didn't ask for an opportunity to amend, I believe, in his opening brief or in his reply brief, so I think the answer is no, and I think if the court is considering that, it should be quite specific about what that could possibly be, given that there has never been a request, there have not been clear answers about what those allegations might be. But if, let's say, depending on how we read health freedom, if we read that to say that there could be an opportunity to amend, he wouldn't, he didn't know about health freedom at the time previously, right? But he does allege in his complaint that the vaccines are not effective. So I don't think that matters. It's not material to the court's decision. And of course, our beginning argument here is that there certainly should be qualified immunity for the individuals, and second of all, the Monell liability issue is not impacted by health freedom at all. If we were to agree with that, that even given health freedom, it didn't come early enough to prevent, to provide clearly established law here, right? So then there would be qualified immunity, and then the Monell liability. I understand your argument. Is there anything left after that? Well, again, I think that what's left is carefully reading health freedoms, pointing to the absence of any judicially noticeable facts. The school district just had nothing to point to. Does he have any claims left? No, no, I think not, because all of the claims in the complaint in this case are 1983 claims against the individuals and against the Penn-Lapine school district. And so the Monell issue and the qualified immunity issue, and I think we've talked a lot about the vaccine, the substantive due process claims over the vaccines and the masks. I think it's really clear that the First Amendment claim related to compelled conduct for wearing a mask is foreclosed by Jacobs v. Clark County in the Supreme Court case in Faire, and the FDA claim is, you know, there's no private action under a long line of Ninth Circuit cases to bring a claim to enforce an alleged right given by that statute, and furthermore, it just doesn't apply to my clients. Continuing on the health freedom issue, again, I just pointed out a couple of examples, but I also wanted to note that in Mr. Wilkins' own submissions, he cites to a number of sources from the FDA. An example would be in his own excerpt or his own addendum at page 154 that says that the Pfizer vaccine at the time that this was implemented was active for immunization to prevent COVID-19, so that's another distinguishing factor from what the court had before it in health freedom. I think Jacobson, going back to Jacobson but squaring it with health freedom, it talks about if you have competing views about science or studies related to vaccine requirements, the court has to assume that when the statute in question was passed, the legislature was not unaware of competing theories and was compelled out of necessity to choose between them, and so I think it was completely appropriate for the court, given the record before it, the allegations and what the plaintiff himself concluded in it, to resolve this case on a rational basis with what it had. And finally, as to health freedom itself, I just want to point out some things that Jacobson talks about that health freedom does not. Jacobson itself talks about that smallpox vaccines were, quote, to render smallpox less dangerous to those who contract it, and then the footnote in that case, the very ending conclusion, talks about the history of vaccines and studies that have been done, and one of the things that it notes is that the English Royal Commission found the vaccine modified the character of the disease and render it less fatal. So I think it's a little bit too narrow to limit Jacobson to just vaccines that prevent transmission, because that's not what Jacobson itself said. In short, I think my clients are certainly entitled to qualified immunity, and I think the court should uphold the grant of the dismissal of the school district because it was just enforcing a mandatory policy and there's no challenge to the discretion in which my clients had done so. Thank you. So the sequence of events I want to clarify, my client was first put on administrative leave as the complaint says before the vaccine mandate due to his resistance to the mask mandate, and so that was the school district's rule and they have no state law that backs up that rule that he wear a mask. Then he was kept on So there wasn't a state rule about wearing a mask? I don't believe so, Your Honor. There was, I don't know the timeline exactly of those rules. He was then kept on administrative leave when the vaccine mandate came out in October of 2021. The district court in this case did not apply in immunities. They were asking you to apply immunity to a case that it did not rule was entitled to immunity. Health Freedom changed the entire landscape for this litigation because every case has been dismissed like the district court did on Jacobson and Health Freedom said no when you plead that the vaccines do not confer immunity then Jacobson does not apply. Period. That's what they said. And we pled at length that the vaccines don't confer immunity. The statutory claim section 564 Congress when it wrote the emergency use statute emergency authorization statute did not forget to include informed consent. It didn't say wipe out all the prior history the Belmont report, everything that says that you get informed consent when you're dealing with experimental drugs. No court has looked at the tests for determining whether there is a private right of action under 1983. They've not applied the test of whether even if there is a provision of section 564 which says all rights under this should be prosecuted by the United States. But that's not comprehensive. No court has actually gone through the elements of the test to assess whether there is a private right of action. Since we don't have questions, you need to be mindful because you're basically out of time. So please wrap up your comments in the next minute. I'm basically done. Any further questions? This matter will then stand submitted and this court is in recess for the week. Now I know the students you've been very well behaved and we try to be well behaved as well. The panel itself is going to take a brief recess we're going to do some discussions. Our law clerks are going to talk to you right now and then we will come out and we'll have a brief discussion with you at that point. Thank you for joining us and we'll be back. We've got several law clerks here that will begin the discussion and we also have the career law clerk who's clerking for us today Ms. Dodds that you can direct this as far as that goes. Thank you. Thank you.
judges: CALLAHAN, NGUYEN, SUNG